## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT WIEDMAIER, <br><br> *Plaintiff*, <br><br> v. <br><br> OPENTABLE, INC., et al., <br><br> *Defendants*. | Civil Action No. 1:19-cv-01063 (CJN) |

### MEMORANDUM OPINION

Robert Wiedmaier brings this action against Defendants OpenTable, Inc., its Chief Executive Officer Check Templeton, and its parent company Booking Holdings Inc. for breach of contract or in the alternative promissory estoppel. *See generally* Compl., ECF No. 1. Defendants have moved to dismiss, arguing that no valid contracts exist between the Parties, that Wiedmaier has failed to plead a promissory estoppel claim, and that the suit is untimely. *See generally* Defs.' Mem. of P. & A. in Supp. of Defs.' Rule 12(b)(6) Motion to Dismiss the Compl. ("Defs.' Mem."), ECF No. 17-1. For the reasons below, the Court grants in part and denies in part Defendants' Motion.

### I.    Background

OpenTable provides reservation management software to restaurants; the software allows potential diners to search for and make reservations online and allows restaurants to manage these reservations. Compl. ¶ 18.[1] Now well-known, OpenTable was founded in San Francisco

---

[1] On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must, of course, accept well-pleaded facts in the Complaint as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

in 1998, and it began providing its software to restaurants in San Francisco and Chicago in 1999. *Id.* ¶ 19.

In its early years, OpenTable pursued a two-stage strategy. *See id.* ¶¶ 21–22. In the first stage, it targeted prominent chefs and restaurants in a city to encourage them to manage their reservations through OpenTable. *Id.* ¶ 21. In the second stage, OpenTable parlayed its prominent chef and restaurant customer base to gain market share among other restaurants. *Id.* ¶ 22. OpenTable is now a multibillion-dollar company. *Id.* ¶ 23.

Around early 2001, OpenTable sought to establish itself in the Washington, D.C. market. *Id.* ¶ 25. Consistent with its two-stage strategy, it targeted Wiedmaier, a prominent D.C. chef, as a potential early user. *Id.* ¶¶ 13, 25–26. In 1999, Wiedmaier had opened Marcel's, a fine dining restaurant that has received critical and popular acclaim, including positive reviews in Washington-area newspapers and magazines. *See id.* ¶ 15. After meeting with OpenTable's Director of Strategic Accounts Michael Schell in early 2001, Wiedmaier agreed that Marcel's would be one of the first D.C. restaurants to use OpenTable. *Id.* ¶¶ 26–27. OpenTable used its relationship with Marcel's to showcase its capabilities and leveraged Wiedmaier's network to sell its software to other restauranteurs in the region. *Id.* ¶¶ 28–29.

In April of that same year, OpenTable's system at Marcel's crashed, causing the restaurant to lose reservations, which unsurprisingly left Wiedmaier's customers unhappy and caused the restaurant to lose business. *Id.* ¶¶ 30–32. Wiedmaier threatened to stop using OpenTable's reservation software, and because he "had been personally promoting the software to his colleagues within the chef community," Wiedmaier was ready to suggest to other restauranteurs that they not use OpenTable's software. *Id.* ¶¶ 33–34, 36.

During an in-person meeting the following month, Templeton committed that OpenTable would permanently fix the software issues, and in exchange for Wiedmaier and Marcel's continued use and promotion of OpenTable, offered Wiedmaier both a reduction in OpenTable fees in perpetuity and 40,000 shares in the company. *Id.* ¶¶ 36–38. Wiedmaier alleges that the company's end of the bargain was documented by two documents on OpenTable letterhead, one stating that he was being given 40,000 shares, and the second documenting the fee reduction. *Id.* ¶ 39. To date, Marcel's still does not pay OpenTable's standard $0.25-per-reservation fee. *Id.* ¶ 41.

Eight years later, OpenTable became a publicly traded company, and five years after that, The Priceline Group, Inc. made a tender offer to OpenTable's shareholders, which would have the effect of converting each outstanding share into the right to receive an offer price of $103. *Id.* ¶¶ 42–43. Priceline completed the tender offer in July 2014 and acquired OpenTable for $2.6 billion. *Id.* ¶ 43.

Around September 2017 (more than sixteen years after his meeting with Templeton), Wiedmaier learned of Priceline's acquisition of OpenTable and began to investigate the status of his shares in the company. *See id.* ¶ 44. In October 2018, Wiedmaier's counsel wrote to Booking Holdings (formerly Priceline) and OpenTable to redeem Wiedmaier's right to receive the $103 for each of the 40,000 shares he claims to own (totaling $4.12 million). *See id.* ¶ 45. OpenTable refused Wiedmaier's demand, stating it had "conduct[ed] a thorough internal investigation" into Wiedmaier's claim and had found no evidence of his owning shares in the company. *Id.* ¶ 46.

On April 16, 2019, Wiedmaier filed the present lawsuit. *See generally id.* He asserts three causes of action, all in the alternative. *See id.* ¶¶ 47–66. First, he claims a breach of

contract claim against Booking Holdings for failing to fulfill the 2014 tender offer. *Id.* ¶¶ 47–52. Second, Wiedmaier claims a breach of contract against OpenTable and its CEO, alleging that they failed to grant him 40,000 shares of the company in 2001. *Id.* ¶¶ 53–59. Finally, he asserts a promissory estoppel claim against OpenTable and its CEO, alleging that OpenTable promised Wiedmaier 40,000 shares and failed to grant them. *Id.* ¶¶ 60–66. On June 24, 2019, Defendants moved to dismiss. *See generally* Defs.' Rule 12(b)(6) Mot. to Dismiss the Compl. ("Defs.' Mot."), ECF No. 17.

## II.     Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff bears the burden to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts alleged in the Complaint as true and draw all reasonable inferences from those facts in the plaintiff's favor. *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1240–41 (D.C. Cir. 2018). And a claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III.     Analysis

### A.     Breach of Contract Claims

"To adequately plead a breach of contract claim, a plaintiff must allege facts showing: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach." *Jia Di Feng v. See-Lee Lim*, 786 F. Supp. 2d 96, 104 (D.D.C. 2011) (citing cases). Defendants challenge whether an enforceable contract between the Parties exists. *E.g.*, Defs.' Mem. at 6–10. Under D.C. law, "[f]or a contract

4

to be enforceable, 'there must be "(1) an agreement to all material terms, and (2) intention of the parties to be bound."'" *Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1002 (D.C. 2008) (quoting *Duffy v. Duffy*, 881 A.2d 630, 634 (D.C. 2005)).  Delaware law—which the Parties agree governs the granting of shares of OpenTable[2]—adds an additional element:  board approval is required for any issuance of stock and for any agreement that binds a corporation to issue stock.  *Grimes v. Alteon, Inc.*, 804 A.2d 256, 261 (Del. 2002) ("The requirement of board approval for the issuance of stock is not limited to the act of transferring the shares of stock to the would-be stockholder, but includes an antecedent transaction that purports to bind the corporation to do so.").

    Defendants argue that "board approval is a necessary element of any enforceable contract attempting to grant shares in a Delaware corporation."  Defs.' Reply at 4.  And because Wiedmaier "has not (and cannot) allege that the OpenTable board ever approved . . . the issuance of 40,000 shares in OpenTable that Mr. Templeton allegedly promised him," Wiedmaier has not stated a breach of contract claim under Delaware law.  Defs.' Mem. at 9.  Wiedmaier counters that these requirements "are relaxed as to information that defendants solely control, such as information about the actions of a private corporation's board."  Pl.'s Opp'n at 9.  In his view, he "pleaded enough 'to raise a reasonable expectation that discovery will reveal evidence' that his share award was approved by OpenTable's board."  *Id.* at 10 (quoting *Twombly*, 550 U.S. at 545).

---

[2] The Parties agree that D.C. law governs this dispute except for the limited question involving when a Delaware corporation intends to be bound in an agreement that grants stock in the corporation; they agree that Delaware law governs this question.  Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mot. ("Pl.'s Opp'n") at 7, ECF No. 19; Defs.' Reply Br. in Supp. of Defs.' Mot. ("Defs.' Reply") at 2, ECF No. 20.

The Supreme Court of Delaware has made clear that the Delaware "statutory scheme . . . establishes a policy that commitments regarding the issuance of stock [in a Delaware Corporation] must be approved in writing by the board of directors." *Grimes*, 804 A.2d at 258. In applying this requirement at the pleading stage, Delaware courts have held that, at a minimum, a plaintiff must allege that a corporation's board of directors approved or authorized an issuance of stock. *E.g.*, *id.* at 259–261, 266 (affirming the Delaware Court of Chancery's dismissal of a complaint that failed to allege "board approval and a written instrument evidencing an agreement obligating the corporation to issue stock either unconditionally or conditionally"); *Knoll Capital Mgmt. L.P. v. Advaxis, Inc.*, No. 11417, 2016 WL 381195, at *1 (Del. Ch. Jan. 29, 2016) (holding that alleging "[o]n information and belief, [that] the Advaxis board of directors authorized [its Chief Executive Officer] to enter into the Agreement, or ratified the Agreement" satisfied Knoll Capital's burden at the pleading stage (alterations in original)); *see also Patriot Sci. Corp. v. Korodi*, 504 F. Supp. 2d 952, 957–60 (S.D. Cal. 2007) (dismissing a claim against a Delaware corporation "for breach of an oral contract for lack of an allegation that Patriot's board of directors approved the options that Korodi alleges he was promised").

Here, Wiedmaier does not allege (even on information and belief) that OpenTable's board of directors approved the alleged grant of shares to him, nor does he allege that the board authorized Templeton to enter into the purported agreement. *See generally* Compl. Wiedmaier has thus failed to adequately allege the existence of an enforceable agreement, which is fatal to both of his contract claims. *See, e.g.*, *Grimes*, 804 A.2d at 261.

Wiedmaier's arguments to contrary are inapposite. He contends that "[a]t least three individuals beside [himself], including a former OpenTable employee, can attest to their contemporaneous knowledge of the share award, and Marcel's still receives the reduction in

6

reservation fees that [he] was promised." Pl.'s Opp'n at 10 (citations omitted). And he claims that this makes it "probable [that] OpenTable's board approved the stock, and any inference to the contrary would require this Court to assume that Mr. Templeton misrepresented the intentions of the company he founded and ran, and promised to bind his company to an agreement allegedly invalid under Delaware law," thus satisfying his burden under Rule 12(b)(6). *Id.* at 10–11. This is especially true, in Wiedmaier's view, "because pleading requirements are relaxed as to information that defendants solely control, such as information about the actions of a private corporation's board." *Id.* at 9. The Court disagrees. Wiedmaier has not alleged, even in the most cursory fashion (and even on information and belief), that OpenTable's board of directors approved or authorized the alleged grant of 40,000 shares to him. Absent such an allegation, his claims lack a necessary element under Delaware law and must be dismissed.

### B. Promissory Estoppel Claim

"Liability on the theory of promissory estoppel requires" three elements "'[1] evidence of a promise, [2] the promise must reasonably induce reliance upon it, and [3] the promise must be relied upon to the detriment of the promisee.'" *Wallace v. Eckert, Seamans, Cherin & Mellott, LLC*, 57 A.3d 943, 958 (D.C. 2012) (quoting *Simard v. Resolution Trust Corp.*, 639 A.2d 540, 552 (D.C. 1994)). Defendants concede that Wiedmaier alleges these first two elements but argue that Wiedmaier has failed to plead detrimental reliance.

The D.C. Court of Appeals has looked to the Restatement (Second) of Contracts § 90 when evaluating promissory estoppel claims. *See, e.g.*, *Howard Univ. v. Good Food Servs., Inc.*, 608 A.2d 116, 121 (D.C. 1992) (discussing the Restatement (Second) of Contracts § 90 (Am. Law. Inst. 1979)). The Restatement defines detrimental reliance as an "action or forbearance on the part of a promisee" induced by a promise. Restatement (Second) of Contracts § 90 (Am.

Law. Inst. 1981). Here, Wiedmaier alleges that, in exchange for the promise of shares in OpenTable and a reduction in OpenTable's fees, he agreed to continue not to criticize OpenTable to other restauranteurs, to continue using OpenTable, and to continue promoting OpenTable. Pl.'s Opp'n at 23–24 (citing Compl. ¶¶ 29, 36, 64). He argues that his "free labor . . .would have ceased but for Defendants' promises" and "undoubtedly qualified as a detriment." *Id.* at 24 (citation omitted). These actions plausibly establish Wiedmaier's detrimental reliance as a result of the promises that were made to him.

Defendants argue that Wiedmaier's Complaint "is devoid of *any* facts alleging his 'promotion' of OpenTable after May of 2011, as well as facts showing how such 'promotion' caused him harm." Defs.' Reply at 18 (citation omitted). In their view, his statements are merely "conclusory" and only "suggest[] that he 'relied' on Mr. Templeton and OpenTable's alleged promises to grant him shares by continuing to use OpenTable and promote the platform." *Id.* at 19. But the Complaint alleges that Wiedmaier continued to promote OpenTable software based on the promise of shares and a perpetual reduction in OpenTable's fee. *E.g.*, Compl. ¶¶ 36, 64. To be sure, the Complaint lacks any details about the specific steps Wiedmaier took to promote OpenTable. But this is not the only way in which Wiedmaier allegedly relied to his detriment—he also alleges he would have stopped using OpenTable but for Templeton's promises—and in any event this is not a fraud claim subject to a heightened pleading standard. Count Three thus adequately alleges a promissory estoppel claim.

### C.     Affirmative Defenses

Defendants also argue that all of Wiedmaier's claims—which were asserted for the first time more than sixteen years after the alleged contract was formed and promises made—are barred by D.C.'s statute of limitations. Defs.' Mem. at 10–12. Wiedmaier argues that his breach of contract claims are not time-barred because of D.C.'s discovery rule, Pl.'s Opp'n at 27–32,

8

and that the equitable doctrine of laches should apply to his promissory estoppel claim, *id.* at 32–35.

Because Wiedmaier has failed to allege the existence of an enforceable agreement, *see supra* Section III.A, the Court does not address this argument as to those claims. And as to Wiedmaier's promissory estoppel claim, the Court need not decide whether the relevant defense is laches (as Wiedmaier suggests) or the statute of limitations (as Defendants suggest) because Defendants have not demonstrated that either requires dismissal of Count Three.

"[B]ecause statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." *Bregman v. Perles*, 747 F.3d 873, 875–76 (D.C. Cir. 2014) (citation omitted). "A court should therefore 'hesitate to dismiss a complaint on statute of limitations grounds' unless the defendant has met his 'heavy burden' to show that the complaint is conclusively time-barred." *Vox Media, Inc. v. Mansfield*, 322 F. Supp. 3d 19, 24 (D.D.C. 2018) (quoting *Feld Entm't, Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 308 (D.D.C. 2012)). Courts apply the same rationale to laches because "[l]aches is a fact-intensive defense poorly suited to a motion to dismiss." *Kemp v. Eiland*, 139 F. Supp. 3d 329, 349–50 (D.D.C. 2015) (citing *Major v. Plumbers Local Union No. 5 of United Ass'n of Journeymen & Apprentices of Plumbing*, 370 F. Supp. 2d 118, 128 (D.D.C. 2005)).

If it applies, the D.C. statute of limitations period for a promissory estoppel claim would be three years. *See* D.C. Code § 12-301(8) (2020) (providing a three-year limitations period for claims "for which a limitation is not otherwise specially prescribed"). But the District of Columbia also recognizes the discovery rule. "Under the discovery rule, a cause of action accrues for limitations purposes 'when the plaintiff has either actual notice of her cause of action

or is deemed to be on inquiry notice because if she had met her duty to act reasonably under the circumstances in investigating matters affecting her affairs, such an investigation, if conducted, would have led to actual notice.'" *Harris v. Ladner*, 828 A.2d 203, 205–06 (D.C. 2003) (quoting *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996)). Wiedmaier has plausibly alleged that he did not discover, and could not have discovered with reasonable diligence, his claim until September 2017, within the limitations period. *E.g.*, Compl. ¶ 44 ("In or around September 2017, Mr. Wiedmaier learned of Priceline's purchase of OpenTable and began to investigate the status of his shares in the company."); *id.* ¶ 38 ("In exchange for Mr. Wiedmaier continuing to use OpenTable at Marcel's, Mr. Templeton offered Mr. Wiedmaier shares in OpenTable, and a reduction in perpetuity for certain OpenTable fees."); *id.* ¶ 41 ("As a result of the agreement, to this day Marcel's does not pay OpenTable's standard $0.25 fee per reservation made through OpenTable directly on the restaurant's website."). Whether Wiedmaier should have been on notice before September 2017 and whether an investigation could have uncovered that he had not been granted OpenTable shares are fact-intensive issues. *See Brin v. S.E.W. Inv'rs*, 902 A.2d 784, 794 (D.C. 2006) (explaining that "two distinct questions may be involved" in evaluating the discovery rule: the "the first is what facts are sufficient to put a plaintiff on 'inquiry notice'" and "[t]he second is what must be discoverable by such an investigation"). Although he may be unable to defeat this argument at summary judgment, Wiedmaier has pleaded just enough to get past a motion to dismiss.

As for laches, it "may be the 'legal cousin' of the statute of limitations, but it 'involves more than the mere lapse of time and depends largely upon questions of fact.'" *Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 532 (D.C. Cir. 2010) (citations omitted). "Laches has two elements: the party asserting a claim of laches must show both (1) that it has

been prejudiced by the delay [in bringing the claim] and (2) that the delay was unreasonable." *Bannum, Inc. v. D.C. Bd. of Zoning Adjustment*, 894 A.2d 423, 431 (D.C. 2006) (quoting *Beins v. D.C. Bd. of Zoning Adjustment*, 572 A.2d 122, 126 (D.C. 1990)).  "[A] complaint seldom will disclose undisputed facts clearly establishing the defense." *Menominee*, 614 F.3d at 532 (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1277 (3d ed. 2004)).  Here, Defendants do not argue that laches requires dismissal of Wiedmaier's promissory estoppel claim; their only argument is that laches does not apply (because the D.C. statute of limitations does).  Defs.' Reply at 15.  Wiedmaier's promissory estoppel claim thus cannot be dismissed on this ground.

## IV.   Conclusion

Because Wiedmaier does not plead enough facts to the existence of an enforceable contract, his breach of contract claims (Counts I and II) are **DISMISSED**.  His promissory estoppel claim (Count III), however, survives.  An Order will be entered contemporaneously with this Memorandum Opinion.

DATE:  June 1, 2020

*(signature)*
CARL J. NICHOLS
United States District Judge